IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

USAA CASUALTY INSURANCE
COMPANY,

      Plaintiff,

v.                                     Civ. No. 20-615 KK/SCY

KATHLEEN M. PERLINSKI *et al.*,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

THIS MATTER is before the Court on Defendants' Motion and Supporting Memorandum to Dismiss Plaintiff's Complaint for Declaratory Judgment (Doc. 8) ("Motion"), filed July 27, 2020. Plaintiff filed a response in opposition to the Motion on August 14, 2020, and Defendants filed a reply in support of it on September 8, 2020. (Docs. 11, 19.) Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully advised, the Court FINDS that the Motion is well taken in part and should be GRANTED IN PART and DENIED IN PART, and this matter should be STAYED pending resolution of the matter originally filed as *Perlinski v. Guill*, D-101-CV-2020-01373 (1st Jud. Dist. Ct., Cty. of Santa Fe, State of N.M.) ("Parallel Proceeding"), or until further Order of the Court.

## I.    FACTS AND PROCEDURAL HISTORY[2]

This declaratory judgment action arises out of an automobile insurance coverage dispute. On March 9, 2020, Defendant Tatianna Perlinski was driving her 2004 Toyota Camry eastbound

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct dispositive proceedings and enter a final judgment in this matter. (Doc. 15.)

[2] For purposes of the present Motion, the parties do not dispute the facts in this section except as otherwise noted.

on Interstate I-40 in Albuquerque, when James Guill tried to cross the highway on foot. (Doc. 1 at 3; Doc. 1-3 at 1-5; Doc. 8 at 1-2; Doc. 8-1 at 5, 54.) Ms. Perlinski's vehicle was in the far-left lane when it struck Mr. Guill, who was crossing from the far-right lane. (Doc. 1 at 3; Doc. 1-3 at 3, 8; Doc. 8 at 1-2; Doc. 8-1 at 54.) Upon colliding with Mr. Guill, Ms. Perlinski lost control of her vehicle and crashed into the guardrail on the right shoulder. (Doc. 1 at 3; Doc. 1-3 at 3-5, 7; Doc. 8 at 3; Doc. 8-1 at 54.) Mr. Guill died at the scene; Ms. Perlinski sustained severe injuries and was transported to the hospital by ambulance. (Doc. 1-3 at 3, 8; Doc. 8 at 3; Doc. 8-1 at 54.)

At the time of the accident, Plaintiff USAA Casualty Insurance Company ("USAA CIC") insured Ms. Perlinski's vehicle under an insurance policy ("Policy") issued to her mother, Defendant Kathleen Perlinski, in care of her father, Defendant Anthony Perlinski.[3] (Doc. 1 at 1-2; Doc. 1-2 at 5-7; Doc. 8 at 4.) Ms. Perlinski was an authorized driver under the Policy. (*Id.*) *Inter alia*, the Policy provided no-fault medical payment benefits of $25,000 per person, and uninsured motorist coverage ("UM coverage") with limits of $100,000 per person and $300,000 per occurrence per vehicle insured. (Doc. 1 at 1-2; Doc. 1-2 at 7; Doc. 8 at 4; Doc. 8-1 at 11-13.) With a total of six insured vehicles, the stacked UM coverage limits equaled $600,000 per person and $1,800,000 per occurrence. (Doc.1 at 1-2; Doc. 8 at 4.)

The pertinent provisions governing UM coverage stated:

A.  We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:
1.  [Bodily injury] sustained by a covered person and caused by an auto accident.
2.  [Property damage] caused by an auto accident.

---

[3] In their answer, Defendants admit that the policy USAA CIC attached to its complaint is "a certified/verified USAA Policy of Insurance" that "cover[ed] the period from December 3, 2019 to March 27, 2020," was "issued to 'Kathleen M. Perlinski C/O of Tony Perlinski,'" and "list[ed] Tatianna L. Perlinski as an operator." (Doc. 6 at 1.) Nevertheless, Defendants deny that this policy "accurately reflects the operative policy of insurance for the subject loss" and "demand strict proof thereof." (*Id.* at 1-2.) To date, Defendants have not proffered a different policy or identified any specific terms in the policy USAA CIC proffered that they dispute. The Court will therefore analyze Defendants' Motion in light of the policy USAA CIC has proffered.  (*See* Doc. 1-2.)

      B.     The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

(Doc. 1-2 at 14-15, 22-23 (emphases omitted).) The Policy defined an "[u]ninsured motor vehicle"

as, *inter alia*, a motor vehicle "[t]o which no liability bond or policy applies at the time of the

accident," "[t]o which a liability bond or policy applies at the time of the accident but the sum of

the limits of liability ... is less than the limit of liability available to a covered person for UM

[c]overage," or "whose owner or operator cannot be identified, and which causes an accident

involving ... [y]ou or any family member[,] ... [a] vehicle you or any family member is occupying[,]

or ... [y]our covered auto." (*Id.* at 23 (emphases omitted).)

      In its complaint, USAA CIC seeks a declaration that the Policy does not provide

Defendants with UM coverage for the March 9, 2020 accident. (Doc. 1 at 4, 8.) USAA CIC claims

that it owes Defendants no UM coverage because Mr. Guill, a pedestrian, was the sole cause of

the accident, while for UM coverage to apply, the tortfeasor's liability must arise out of the

ownership, maintenance, or use of an uninsured motor vehicle. (*Id.* at 5-7.) According to USAA

CIC, this case turns solely on whether the UM portion of the Policy "covers damages and injuries

caused solely by a pedestrian." (Doc. 11 at 2.)

      Defendants view the case differently. Relying on eyewitness affidavits, Defendants

contend that Mr. Guill was "dodging" vehicles as he crossed the freeway, and that some of these

vehicles swerved out of their lanes to avoid hitting him. (Doc. 8 at 2 & n.3.) According to

Defendants, "these motorists directed and veered [Mr.] Guill into the far-left lane of traffic, and

ultimately, into the path of [Ms.] Perlinski's motor vehicle." (*Id.* at 2.) Defendants contend that

these unidentified motorists violated state traffic laws, breached the duty of reasonable care they

owed to other drivers, and contributed to Ms. Perlinski's collision with Mr. Guill, thereby triggering UM coverage under the Policy.[4] (*Id.* at 2-4; Doc. 8-1 at 21-23.)

Five days after USAA CIC filed its complaint in this Court but before USAA CIC served the complaint on Defendants, Kathleen and Tatianna Perlinski filed the Parallel Proceeding in the First Judicial District Court, County of Santa Fe, State of New Mexico. (Doc. 1 at 1; Doc. 8 at 5; Doc. 8-1 at 1.) In that case, the Perlinskis named the following entities and persons as defendants: USAA CIC; Cathy Guill and/or the Personal Representative of the Estate of James Guill; the United Services Automobile Association ("USAA"); Joseph Andrejco and Heidi Hawken[5]; and, John and Jane Does 1 through 10, the unidentified motorists who allegedly contributed to the accident at issue. (Doc. 8-1 at 1-4.)

In the Parallel Proceeding, the Perlinskis assert claims for:  (1) negligence and negligence *per se* against Ms. Guill and/or the personal representative of Mr. Guill's estate; (2) negligence and negligence *per se* against the ten Doe defendants; (3) breach of contract, breach of fiduciary duties, UM benefits, and insurance bad faith against USAA CIC and USAA; and, (4) breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, violations of the Trade Practices and Frauds Act of the New Mexico Insurance Code, the New Mexico Unfair Claims Practices Act, and the New Mexico Unfair Trade Practices Act, and punitive damages against USAA CIC, USAA, Mr. Andrejco, and Ms. Hawken. (*Id.* at 19-40.)

---

[4] According to Defendants, "because none of the offending motorists … remained at the scene to identify [themselves] or exchange insurance information," they are operators of "uninsured motor vehicles" under the Policy. (Doc. 8-1 at 9 & n. 4; *see* Doc. 1-2 at 23 ("uninsured motor vehicle" includes "a motor vehicle whose owner or operator cannot be identified, and which causes an accident involving" a covered person or vehicle).)

[5] The Perlinskis allege that Mr. Andrejco and Ms. Hawken were claims representatives for USAA CIC or USAA at the relevant times. (Doc. 8-1 at 2-3.)

On October 13, 2020, USAA CIC removed the Parallel Proceeding to this Court on the basis of diversity jurisdiction. *See Perlinski v. Guill*, Civ. No. 20-1053 JB/JHR, Doc. 1 (D.N.M. filed Oct. 13, 2020). However, on January 4, 2021, USAA CIC and the Perlinskis filed a Stipulated Motion to Remand the Parallel Proceeding back to state court.[6] *Id.*, Doc. 25 (D.N.M. filed Jan. 4, 2021). The Stipulated Motion to Remand remains pending at this time.

## II.    APPLICABLE LAW

USAA CIC filed this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. (Doc. 1 at 2.) The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," a federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "The Supreme Court has long made clear that the Declaratory Judgment Act g[ives] the federal courts competence to make a declaration of rights" but "d[oes] not impose a duty to do so." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quotation marks omitted) ("*Mhoon*"). Thus, under the Act, federal district courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002); *see also St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995) (whether to exercise jurisdiction over declaratory judgment action "is vested in the sound discretion of the district courts").

The Supreme Court has cautioned that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). Therefore, a court "should not

---

[6] Ms. Guill, the only other party who has appeared in the Parallel Proceeding, does not oppose the Stipulated Motion to Remand. *Perlinski*, Civ. No. 20-1053 JB/JHR, Doc. 25 (D.N.M. filed Jan. 4, 2021).

entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *St. Paul Fire & Marine Ins. Co.,* 53 F.3d at 1170 (quoting *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989)).

In *Mhoon*, the Tenth Circuit listed five factors courts should consider in deciding whether to exercise jurisdiction in such circumstances:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

31 F.3d at 983. In evaluating these factors, courts should also consider "the degree of similarity" between the federal and state court proceedings. *City of Las Cruces*, 289 F.3d at 1182. "But there is no requirement that the state and federal actions be identical, and their similarity is just one of the many considerations a federal court must balance when deciding whether to grant declaratory relief." *Hatton v. Combs*, 793 F. App'x 801, 805 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 1216 (2020).

## III.    ANALYSIS

In their Motion, Defendants ask the Court to decline to exercise its jurisdiction and dismiss USAA CIC's declaratory judgment action without prejudice. (Doc. 8 at 14.) In the alternative, they ask the Court to stay this case until the Parallel Proceeding is resolved. (*Id.*) Conversely, USAA CIC argues that "the Court should exercise its discretion here[,] move forward with the declaratory relief action," and deny Defendants' Motion in its entirety. (Doc. 11 at 7-8.) In their briefs, USAA CIC and Defendants agree that the Court should apply the *Mhoon* factors in deciding Defendants' Motion. (Docs. 8, 11, 19.) Moreover, though briefing on the Motion was complete before USAA

CIC removed the Parallel Proceeding to federal court, neither side has sought to withdraw or amend their submissions; and, it appears likely that the Parallel Proceeding will return to state court in light of the Stipulated Motion to Remand pending in that case. Thus, in the Court's view, the *Mhoon* analysis still provides the most appropriate framework for deciding Defendants' Motion at this time.

   *a.  The First and Second Mhoon Factors Weigh Against Exercising Jurisdiction[7]*

The first two *Mhoon* factors require the Court to consider whether a declaratory judgment would settle the controversy or serve a useful purpose in clarifying the legal relations at issue. *Mhoon*, 31 F.3d at 983. These two factors are "designed to shed light on the overall question of whether the controversy would be better settled in state court." *City of Las Cruces*, 289 F.3d at 1187. If a declaratory judgment would likely "resolve the immediate dispute between the parties [it] may tip the scales in favor of exercising jurisdiction." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 n.3 (10th Cir. 2012). On the other hand, "the existence of outstanding claims in a parallel state court action may counsel a different conclusion. Especially relevant may be whether the state court action would necessarily resolve the issues in the declaratory judgment action." *Id.*

In their Motion, Defendants argue that a declaratory judgment in this case would not settle the parties' controversy. (Doc. 8 at 8.) More particularly, they argue that a declaratory judgment regarding UM coverage would not resolve all of the parties' disputes relating to the March 9, 2020 accident because they have brought claims against USAA CIC in the Parallel Proceeding that do not depend on such coverage. (*Id.* at 9.) Defendants further contend that, because other claims

---

[7] The Court addresses these two factors jointly because the parties' arguments regarding them substantially overlap. (*See* Doc. 8 at 8-10; Doc. 11 at 4-5; Doc. 19 at 7-9.)

would remain regardless of the outcome of this case, a declaratory judgment would not serve a useful purpose in clarifying the parties' legal relations; on the contrary, it would require the parties to litigate their disputes regarding the accident piecemeal in two separate fora. (*Id.* at 9-10.)

USAA CIC counters that a declaratory judgment would settle the only real controversy between the parties, which, it argues, is whether the UM portion of the Policy "covers damages and injuries caused solely by a pedestrian." (Doc. 11 at 4-5.)  According to USAA CIC, the answer to this question is "no," and a declaratory judgment to that effect would "serve a useful purpose in clarifying the legal issues at hand." (*Id.* at 4.)

In the Parallel Proceeding, the Perlinskis have asserted a number of claims against USAA CIC. (Doc. 8-1 at 23-40.) Many of these claims appear to turn on the resolution of the question presented in this case, *i.e.*, whether the Policy provides UM coverage for the accident at issue. Some, however, do not. For example, some of the Perlinskis' claims rely on allegations that USAA CIC failed to conduct an appropriate investigation and delayed medical payment benefits not dependent on UM coverage. (*See, e.g., id.* at 29-30.) As such, even if the Court were to rule in USAA CIC's favor in this case, such a ruling would not resolve all of the parties' disputes related to the accident. *See, e.g., Farmers Ins. Co. of Ariz. v. Higgins*, Civ. No. 19-738 SCY/CG, 2020 WL 806366, at *3 (D.N.M. Feb. 18, 2020) ("*Higgins*") ("Even if this Court were to issue a decision in Plaintiffs' favor … [it] would not necessarily resolve all of Defendants' extra-contractual claims against Plaintiffs."); *Nationwide Mut. Ins. Co. v. C.R. Gurule, Inc.*, 148 F. Supp. 3d 1206, 1226-1227 (D.N.M. 2015) (declaratory judgment on coverage "would not fully resolve the dispute between the parties" because insureds had other pending state law claims against insurer, including an unfair practices claim). "Ruling on a declaratory judgment that relates to only part of the dispute between the parties would be inefficient." *Higgins*, 2020 WL 806366 at *3.

Conversely, completion of the Parallel Proceeding—which USAA CIC and the Perlinskis agree should be remanded to state court—*would* likely resolve all of the parties' disputes.[8] As already noted, many of the Perlinskis' claims in the Parallel Proceeding turn on the issue presented in this case, *i.e.*, whether the Perlinskis are entitled to UM coverage under the Policy as a result of the March 9, 2020 accident. For example, the Perlinskis' claims for breach of contract and UM benefits plainly raise this issue. (*See* Doc. 8-1 at 23-29.) Where, as here, "[t]he issue in the federal declaratory judgment action is identical to what would be [at issue in] the state court contract action[,] ... it is not necessary for the federal court to issue a declaration on the insurance contract." *St. Paul Fire & Marine Ins. Co.*, 53 F.3d at 1169; *accord Farmers Ins. Co. of Ariz. v. Komis*, Civ. No. 17-703 WJ/JHR, 2017 WL 6372663, at *3 (D.N.M. Dec. 12, 2017) ("*Komis*") ("[I]t is undisputed that the two pending proceedings involve the same issue and parties. This factor favors abstention.").

This conclusion is consistent with *Mhoon*, in which the Tenth Circuit found that the trial court did not abuse its discretion in exercising jurisdiction because there was "a live need for a declaration of [the insurer's] rights and duties" and "[n]either party…suggested that [the insurer] was, or could have been made, a party to the state tort action." *Mhoon*, 31 F.3d at 983-84. The circumstances in this case are meaningfully distinct from those in *Mhoon*. Here, USAA CIC *is* a party to the Parallel Proceeding, and its rights and duties vis-à-vis the Perlinskis will likely be determined more efficiently in that action.

---

[8] One of the defendants in this case, *i.e.*, Anthony Perlinski, is not a party to the Parallel Proceeding. (Doc. 1); *Perlinski*, Civ. No. 20-1053 JB/JHR, Doc. 1 (D.N.M. filed Oct. 13, 2020). However, both cases arise out of the same insurance policy, accident, vehicle(s), and driver(s), and Kathleen and Anthony Perlinskis' interests appear wholly aligned. Thus, it seems likely that the resolution of Kathleen and Tatianna Perlinskis' claims in the Parallel Proceeding would largely resolve any claims and defenses Mr. Perlinski has raised or could raise as well.

In short, the Parallel Proceeding will likely settle the parties' entire controversy, while a declaratory judgment in this case would not. Thus, a declaratory judgment in this case would not serve a useful purpose in clarifying the parties' legal relations. *Id.* at 983; *see also, e.g., Komis*, 2017 WL 6372663 at *3 ("[T]his federal declaratory action would not serve any useful purpose, as all issues can be decided in state court."). The Court therefore finds that, on the present record, the first two *Mhoon* factors weigh against the exercise of jurisdiction in this case.

  *b.   The Third Mhoon Factor is Neutral*

  The third *Mhoon* factor asks courts to consider "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*.'" *Mhoon*, 31 F.3d at 983. In weighing this factor, courts should carefully consider the timing of the pending cases, particularly where "the timing of the federal claim suggests that its main purpose is to delay the state court action or receive a favorable judgment on an issue before the state court has a chance to fully develop the facts." *W. Am. Ins. Co. v. Atyani*, 338 F. Supp. 3d 1227, 1233 (D.N.M. 2018); *see also City of Las Cruces*, 289 F.3d at 1189-90 (timing was significant where party filed federal declaratory judgment action shortly after state court rejected its jurisdictional challenges).

  USAA CIC filed this declaratory judgment action on June 24, 2020, five days *before* the Perlinskis filed the Parallel Proceeding in state court. (Doc. 1 at 1; Doc. 8-1 at 1.) By that time, the parties appear to have reached an impasse over whether the Policy provided UM coverage for the accident. USAA CIC informed the Perlinskis of its belief that there was no UM coverage as early as April 8, 2020, and the Perlinskis allegedly threatened to file suit on March 23, 2020 and June 10, 2020. (*See* Doc. 8-1 at 11-12, 15-16, 57-58 & ns. 7, 16, 18.) These circumstances support USAA CIC's position that its purpose in filing this action was to seek judicial resolution of the

parties' dispute regarding the scope of UM coverage, and not to cause delay in a yet-to-be-filed state court case.[9] (Doc. 11 at 6); *see Allstate Fire & Cas. Ins. Co. v. Sharp*, Civ. No. 18-1049 RB/KK, 2019 WL 4575609, at *5 (D.N.M. Sept. 20, 2019) (finding no manipulation by insurer even though it filed declaratory judgment action the same date it made settlement offer, where parties were clearly "at an impasse" over coverage and insured had threatened suit; *Farmers Ins. Co. of Ariz. v. Castillo*, No. 17-CV-389 MV/SCY, 2019 WL 1383531, at *4 (D.N.M. Mar. 27, 2019) ("*Castillo*") ("[B]ecause the federal case was filed first, it cannot be said that the main purpose was to delay the [s]tate [c]ourt [a]ction.").

Defendants suggest that USAA CIC's "dilatory tactics" leading up to June 24, 2020 were intended to delay the Perlinskis' filing of the Parallel Proceeding until after it had filed this action. (Doc. 8 at 10-12.) However, even assuming USAA CIC engaged in the "dilatory tactics" alleged, Defendants have failed to explain how doing so gave it "an unfair advantage in litigation for a corporate profit motive." (*Id.* at 12); *see Castillo*, 2019 WL 1383531 at *4 ("Defendant has not substantiated his assertion that Plaintiff engaged in procedural fencing other than arguing that it used 'dilatory tactics'[.]") Though Defendants argue that insurance companies generally prefer federal court over state court, (Doc. 8 at 12), that USAA CIC may have had a "preference[] for a particular forum … does not support an inference that [it] attempted to manipulate the courts." *Essentia Ins. Co. v. Sanchez*, Civ. Civ. No. 13-1223 MCA/KBM, 2014 WL 11512632, at *6 (D.N.M. Sept. 30, 2014). The Court declines to hold that the mere fact of proceeding in federal court would unfairly advantage USAA CIC.[10]

---

[9] The Court does note, however, that USAA CIC has not been asked to defend an insured whose liability coverage is disputed and so did not file this lawsuit to avoid the "peril" of deciding whether to tender a defense or risk breaching its duty to defend by refusing to do so. (*See* Doc. 11 at 3.) Thus, its citation to *Dove v. State Farm Fire & Casualty Co.*, 2017-NMCA-051, ¶ 14, 399 P.3d 400, 405, is inapposite. (*Id.*)

[10] The Court is aware that in the Parallel Proceeding, USAA CIC stands accused of bad faith and state statutory violations, while in this case it does not. It is certainly possible that, as a result, USAA CIC would prefer to resolve

In short, Defendants have not successfully demonstrated that USAA CIC filed this lawsuit for an improper purpose. On the other hand, the Court has no reason to believe that the Perlinskis' filing of the Parallel Proceeding was mere procedural fencing on their part, even though they filed it five days *after* USAA CIC filed this action. As previously discussed, it appears that the Perlinskis notified USAA CIC of their intent to sue before USAA CIC filed this action; and, they filed the Parallel Proceeding before USAA CIC served them with process in this case. (Doc. 8 at 5; Doc. 8-1 at 11-12, 15-16 & ns. 7, 16, 18.) The Court therefore finds that this factor is neutral on the present record. *See Allstate Fire & Cas. Ins. Co.*, 2019 WL 4575609 at *5 (concluding "that neither party has successfully shown that the other engaged in procedural fencing" and therefore "[t]he third *Mhoon* factor is neutral").

      *c.   The Fourth Mhoon Factor Weighs Against Exercising Jurisdiction*

The fourth *Mhoon* factor asks "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Mhoon*, 31 F.3d at 983. The Tenth Circuit has held that, where the applicable substantive law is "within the ambit of state court expertise," a federal declaratory judgment "would … encroach upon the traditional jurisdiction of the state courts." *City of Las Cruces*, 289 F.3d at 1190. Thus, a "state court's determination of insurance coverage is typically preferable to the [f]ederal [c]ourt's determination, particularly when there are no issues of federal law presented." *Century Sur. Co. v. Roybal*, Civ. No. 11-1107 BB/ACT, 2012 WL 13005437, at *4 (D.N.M. Aug. 23, 2012); *cf. Kunkel*, 866 F.2d at 1276 ("[N]othing in the Declaratory Judgment Act prohibits a court from

_____

the question of UM coverage in this case rather than the Parallel Proceeding. Nevertheless, the Court does not believe that USAA CIC would have an unfair advantage if the Court were to resolve the coverage question in this forum, particularly where the Court has been made abundantly aware of the Perlinskis' bad faith and statutory claims.

deciding a purely legal question of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues.").

Defendants assert that the fourth *Mhoon* factor weighs against the exercise of federal jurisdiction in this case because New Mexico law governs all substantive aspects of the parties' controversy. (Doc. 8 at 12.) Defendants further assert that this case presents significant, novel issues of state law regarding the scope of UM coverage, and the state courts should therefore decide these issues. (*Id.* at 12-13.) USAA CIC, in contrast, contends that resolution of this action "only requires a review of the plain and unambiguous language of the policy and a review of the facts" as presented by the parties, and therefore, the exercise of federal jurisdiction would create no friction between the state and federal courts. (Doc. 11 at 6-7.)

Neither this case nor the Parallel Proceeding presents any substantive issues of federal law. On the contrary, it is undisputed that New Mexico law governs the scope of UM coverage under the Policy as well as the Perlinskis' extra-contractual claims. Further, as previously discussed, the state law question regarding the scope of UM coverage is at issue in both actions. "[I]t would be uneconomical as well as vexatious" for the Court to allow this declaratory judgment suit to proceed when the Parallel Proceeding, assuming it is remanded, will "present[] the same issues, not governed by federal law, between the same parties" in state court. *Brillhart*, 316 U.S. at 495; *accord Komis,* 2017 WL 6372663 at *4 (fourth *Mhoon* factor weighed "heavily against invoking jurisdiction" because state law governed all claims and state court proceeding involved same parties and issues).

Also, the UM coverage issue is not as straightforward as USAA CIC suggests. Though USAA CIC contends that Mr. Guill was the sole cause of the accident, Defendants claim that other, unidentified motorists contributed to it as well. (Doc. 1 at 3, 5; Doc. 8-1 at 5-7.) In the Court's

view, it would be preferable for the state courts to address this potentially novel mixed question of fact and state law in the first instance. *See, e.g., Bristol W. Ins. Co. v. Salas*, 469 F. Supp. 3d 1175, 1179 (D.N.M. 2020) ("The state court has an interest in deciding this insurance-based contractual question and in shaping the doctrine within the state."); *see also Greenfield v. Bruskas*, 1937-NMSC-028, ¶ 19, 41 N.M. 346, 68 P.2d 921, 926 ("Proximate cause is said to be a mixed question of law and fact[.]").

USAA CIC cites *Nationwide Mutual Insurance Co.*, 148 F. Supp. 3d at 1229, for the proposition that "[t]he exercise of jurisdiction over a case involving contract interpretation does not *by itself* create friction with state courts." (Doc. 11 at 6 (emphasis added).) However, after so stating, the *Nationwide* court went on to consider several other circumstances similar to those at issue here, and ultimately found that exercising jurisdiction over the federal declaratory judgment action "could create friction with the state courts."[11] 148 F. Supp. 3d at 1229. Thus, USAA CIC's reliance on *Nationwide* is misplaced.

Of course, if the Parallel Proceeding were to remain in federal court, then the Court's exercise of jurisdiction in this case would pose no risk of creating friction between the federal and state courts or encroaching on the state court's jurisdiction. At this juncture, though, it appears likely that the Parallel Proceeding will return to state court pursuant to the Stipulated Motion to Remand pending in that case. For all of the foregoing reasons, the Court finds that allowing this case to proceed would likely create friction with the state courts and that the fourth *Mhoon* factor weighs against the exercise of federal jurisdiction at this time.

    *d.  The Fifth Mhoon Factor Weighs Against Exercising Jurisdiction*

---

[11] Specifically, the *Nationwide* court noted that the case before it "involve[d] solely state law issues," "require[d] more than a simple legal determination," and "involve[d] the same issues pending before the state court." 148 F. Supp. 3d at 1229.

14

The fifth and final *Mhoon* factor requires the Court to consider whether there is a better or more effective remedy available to the parties. *Mhoon*, 31 F.3d at 983. Defendants contend that the Parallel Proceeding will provide a more effective remedy than this action because it will resolve all of the parties' disputes in a single forum, and one better suited to apply and interpret state law. (Doc. 8 at 13.) USAA CIC counters that this action will provide the more effective remedy because the parties' UM coverage dispute is "not … currently before the state court," and this Court can likely resolve the dispute more quickly than the state court can. (Doc. 11 at 7.)

Having carefully considered both sides' arguments, the Court agrees with Defendants that the Parallel Proceeding will likely provide a more effective remedy for the parties' controversy. Unlike this proceeding, the Parallel Proceeding is poised to resolve all of the parties' disputes relating to the March 9, 2020 accident in a single action and will, assuming it is remanded, proceed before a court better suited to decide the state law issues presented. *See, e.g., Bristol W. Ins. Co.*, 469 F. Supp. 3d at 1179–80 (holding that resolving all of the parties' disputes in "a single tribunal" was preferable to doing so "in a piecemeal manner . . . in federal court"); *cf. ARW Expl. Corp. v. Aguirre,* 947 F.2d 450, 454-55 (10th Cir. 1991) (recognizing that state court proceeding could not provide the most effective remedy because it had been dismissed, not all claims at issue had been raised in it, and not all parties to declaratory judgment action had been parties to it).

It is not entirely clear to the Court what USAA CIC meant when it argued, on August 14, 2020, that the parties' UM coverage dispute was not "before the state court" at that time. (Doc. 11 at 7.) As of that date, the Perlinskis had filed the Parallel Proceeding in state court and USAA CIC had not yet removed it to federal court.[12] Thus, the coverage dispute *was* before the state court at

---

[12] As previously noted, the Perlinskis filed the Parallel Proceeding in state court on June 29, 2020, (Doc. 8-1 at 1), and USAA CIC removed that case to this Court on October 13, 2020. *Perlinski*, Civ. No. 20-1053 JB/JHR, Doc. 1 at 1 (D.N.M. filed Oct. 13, 2020).

that time, *e.g.*, by way of the Perlinskis' claims for breach of contract and payment of UM benefits. (Doc. 8-1 at 23-29.) Granted, USAA CIC does not appear to have filed a dispositive motion based on lack of coverage in that case, but neither has it done so here. Moreover, as previously noted, although the coverage dispute has not been before the state court since removal, the Court has reason to believe it will soon return to that forum, because USAA CIC and the Perlinskis have jointly asked for the Parallel Proceeding to be remanded. *Perlinski*, Civ. No. 20-1053 JB/JHR, Doc. 25 at 1 (D.N.M. filed Jan. 4, 2021). Assuming their request is granted, the Parallel Proceeding will once again place the parties' coverage dispute squarely before the state courts.

In addition, though USAA CIC argues otherwise, (Doc. 11 at 7), the Court cannot confidently predict that it would be able to resolve the UM coverage dispute more quickly than the state court. And even if it could, in the particular circumstances of this case "the speediest solution" to the discrete question of UM coverage does not appear to be "the best, or most efficient, or fairest means of managing the case as a whole." *Bristol W. Ins. Co.*, 469 F. Supp. 3d at 1179. On the contrary, "keep[ing] broader notions of judicial economy in mind," *id.*, the Court finds that the Parallel Proceeding will likely provide the parties with a more effective remedy and that the fifth *Mhoon* factor weighs against the exercise of federal jurisdiction.

> e.    *The Court Will Stay the Case Rather Than Dismiss It*

Having found that four of the five *Mhoon* factors weigh against the exercise of federal jurisdiction and that the remaining factor is neutral, the Court in its discretion will decline to exercise jurisdiction in this declaratory judgment action at this time. Thus, the Court must next decide whether to dismiss the case without prejudice or stay it pending resolution of the Parallel Proceeding or some other relevant and substantial change of circumstance. *See City of Las Cruces*, 289 F.3d at 1192-93 (upholding district court's decision to withhold jurisdiction over declaratory

16

judgment action but remanding case for district court to "consider whether the preferable remedy is to stay the federal proceedings"). In this regard, the Court notes that Defendants have requested a stay as an alternative to dismissal without prejudice. (Doc. 8 at 14.)

As the Tenth Circuit has observed,

> [t]he [*Mhoon*] analysis involves some measure of prognostication. In determining which forum would be best, the district court considers such questions as whether the state proceedings will *likely* adjudicate the claims of the federal parties and whether the federal proceeding will serve any useful purpose considering the *likely* scope of the state proceeding.

*City of Las Cruces*, 289 F.3d at 1192 (emphases in original). Given the uncertainty inherent in such predictions, "[a] stay will often be preferable" to dismissal. *Id.*; *see also Essentia Ins. Co.*, 2014 WL 11512632 at *8 ("[A] stay, rather than a dismissal, will often be a preferable remedy in the declaratory judgment context.") (quotation marks and brackets omitted); *First Mercury Ins. Co. v. MRCO, Inc.*, No. CV 12-1057 JP/CEG, 2013 WL 12170302, at *6 (D.N.M. Mar. 21, 2013) (holding that "[a] stay is the preferred remedy" where federal court declines to exercise declaratory judgment jurisdiction); *Philadelphia Indem. Ins. Co. v. Joy Junction, Inc.*, No. 12-CV-0286 RB/CG, 2012 WL 13012754, at *3 (D.N.M. Oct. 16, 2012) ("[O]nce a district court determines that it should not exercise jurisdiction over a declaratory action, a stay is often the preferable remedy."). A stay

> allow[s] the district court to quickly reconsider whether the state forum remains the best in which to hear the federal parties' claims should the court's predictions regarding the scope of the state proceedings turn out to be erroneous…. Additionally, a stay may be appropriate if the district court determines that there exists a significant possibility of delay or other procedural inadequacy in the state proceedings.

*City of Las Cruces*, 289 F.3d at 1192 (citations omitted); *Essentia Ins. Co.*, 2014 WL 11512632 at *8; *First Mercury Ins. Co.*, 2013 WL 12170302 at *6.

17

In applying the *Mhoon* factors to this case, the Court has had to predict the future course of the Parallel Proceeding. *Inter alia*, the Court has had to rely on the likelihood that the Parallel Proceeding will be remanded to state court, and that the state court will find USAA CIC to be a proper party and will resolve the UM coverage dispute at issue in this case. However, it is of course possible that events will not unfold as predicted. A stay, rather than dismissal, will allow the Court "to quickly reconsider whether the state forum remains the best in which to hear the federal parties' claims should the [C]ourt's predictions regarding the [Parallel Proceeding] turn out to be erroneous." *City of Las Cruces*, 289 F.3d at 1192. Further, a stay is more appropriate than dismissal in this case because the current posture of the Parallel Proceeding presents a "significant possibility of delay." *Id.* For these reasons, the Court in its discretion will stay this case rather than dismiss it.

IT IS THEREFORE ORDERED that Defendants' Motion and Supporting Memorandum to Dismiss Plaintiff's Complaint for Declaratory Judgment (Doc. 8) is GRANTED IN PART and DENIED IN PART, and this matter is STAYED pending resolution of the matter originally filed as *Perlinski v. Guill*, D-101-CV-2020-01373 (1st Jud. Dist. Ct., Cty. of Santa Fe, State of N.M.), or until further Order of this Court.

IT IS FURTHER ORDERED that USAA CIC shall, within five (5) business days of the resolution of the Perlinskis' claims against USAA CIC in the matter originally filed as *Perlinski*, D-101-CV-2020-01373, file a notice of such resolution in this case.

IT IS SO ORDERED.

_____

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE